Deborah Faye KOLAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–84–00649–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 6, 1986.

William E. Tise, Houston, for appellant.

William A. Meitzen, Fort Bend Dist. Atty., Terry Breen, Asst. Dist. Atty. of Fort Bend, Richmond, for appellee.

Before SAM BASS, COHEN and HOYT, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a conviction of attempted murder. Punishment was assessed at five years confinement.

We affirm.

On July 24, 1983, officers of the Richmond Police Department and deputies of the Fort Bend County Sheriff's Office investigated a crime scene on Thompson Highway in Richmond, Texas. A pickup truck was parked on the shoulder of the road with the driver's door open. Appellant's common law husband, Ronald Kolar, lay on the ground near the rear tire, and the complainant, Cindy Janczak, lay in a lot northwest of the truck. Both individuals had gunshot wounds in the stomach area. Two spent .25 caliber casings were recovered; one on the driver's floorboard area and the other to the left of the front tire. A Raven .25 caliber automatic was recovered from the seat of the truck.

Officer Ramirez first discovered the scene while on patrol. After emergency units and Fort Bend County deputies arrived, Ramirez located appellant's vehicle at a nearby convenience store, where he found appellant using a telephone and crying. He also observed that she had a bleeding nose. After a brief conversation, appellant was taken into custody. Ramirez later visited Ronald Kolar at the hospital and was told by him that he would file charges against appellant.

Sam Shelton testified he saw appellant at a convenience store. She was crying and shouting for someone to call an ambulance and the police. She told Shelton that she had shot a man and a woman on the highway. Shelton went to the scene and talked to Kolar, who told him Janczak had also been shot. He found her and administered first aid.

Cindy Janczak testified that she had previously met appellant but had never had an argument with her. She claimed to have a casual dating relationship with Kolar. On the night of the incident, she and her sister went to an establishment called the Wounded Armadillo, where she met Kolar. Janczak then rode with Kolar and his sister, Rebecca Kolar Stalker, to an establishment called Stetson Hall and left at about 2:00 a.m.

Janczak further testified that as they were driving down Thompson Highway, appellant's car appeared behind them. Appellant tried to run them off the road, and both vehicles eventually stopped. Appellant and Kolar stepped out of their vehicles, and he immediately moved her vehicle to the shoulder of the road. The Kolars had a discussion, following which appellant told Janczak and Stalker to get out of the truck. Both exited and stood near the truck. At this point, appellant pulled a gun and shot Kolar. Appellant then aimed at Janczak and shot her. Janczak saw appellant's gun pointing at her stomach as well as the flash of the gun's muzzle. While Stalker and Kolar tried to wrest the gun from appellant, Janczak got up and crawled away.

Stalker testified that immediately prior to the shooting, appellant and her husband were engaged in a heated argument. When appellant's husband left to move the car, appellant started pulling Janczak from the truck. Stalker was trying to convince appellant that Janczak was her friend. As soon as Kolar returned, he was shot, and Stalker could see the lighting of the gun. By this time, Janczak had exited the truck; appellant then turned from Kolar, pointed the gun at Janczak, and shot her. After Janczak was shot, Stalker struck appellant, and both she and Kolar struggled to take the gun from appellant. Stalker eventually managed to throw the gun away.

Kolar testified that he, his sister, and Janczak were all drunk on the night of the incident, contrary to the testimony of Janczak and Stalker. After appellant stopped him, he approached her in order to talk about having been "caught" with Janczak. He also testified that he, appellant, and Janczak were all struggling with the gun when it went off, and that his sister eventually threw the gun into the truck where it was discovered by police.

Appellant testified that she had briefly visited someone at the Wounded Armadillo on the night of the incident but that no one told her that her husband's party had been there. She also testified that her husband had been known to see other women, that they had talked about a divorce, and that she had a confrontation with Janczak a couple of months before the shooting.

Appellant testified that she happened upon her husband's truck on the highway, noticed Janczak was with them, and stopped them to talk to her husband. Her husband suggested they go home to talk, but she responded that she wanted to talk to Janczak. While her husband was moving her car, appellant forced Janczak out of the truck, and they argued near the open door. Janczak then lunged inside the truck for a gun, and a struggle ensued between Janczak and appellant during which the gun went off shooting Janczak, followed by another struggle between her husband, his sister, and herself during which the gun went off, shooting her husband.

Both Janczak and Stalker testified that no one was armed with any weapon except the appellant, nor had anyone placed the appellant in fear for her life or serious bodily injury. Stalker testified she did not know where the gun came from, nor had she seen a gun in the truck or appellant reaching in the truck for anything. Kolar testified that the gun used was in the glove compartment of his truck, although he didn't know how it got there.

Diane MacDonald testified that she noticed something unusual and stopped her car. She saw four people arguing in front of a pickup truck and heard a couple of shots fired; then she left.

Allen Mutchler, a firearms proficiency expert with the Fort Bend County Sheriff's Department, testified that the pistol in evidence would not fire if pressed against someone's abdomen and that he had tested that pistol in just such a manner.

In her first ground of error, appellant argues that the trial court erred in overruling appellant's motion for change of venue because the State's only witness, Roy Saldi-var, failed to controvert appellant's evidence that she could not obtain a fair trial in Fort Bend County. Specifically, appellant claims that Saldivar failed to support his controverting affidavit by allegedly admitting that he did not know whether appellant's affiants were credible or whether they had sufficient knowledge to support their affidavits, and that he had no opinion whether appellant could receive a fair trial in Fort Bend County.

■ The filing of a controverting affidavit raises a fact issue to be tried and resolved by the trial court on its merits. Such a decision is within the discretion of the court, and will only be reversed upon a showing that the trial court abused its discretion. *McManus v. State*, 591 S.W.2d 505, 516 (Tex.Crim.App.1979); *Adami v. State*, 524 S.W.2d 693, 703–704 (Tex.Crim. App.1975). A controverting affidavit, therefore, is not intended as a complete paper answer to a defendant's challenge; it is not designed to enable the trial judge to resolve the ultimate issue upon motions and affidavits. *Berghahn v. State*, 696 S.W.2d 943, 950 (Tex.App.—Fort Worth 1985, no pet.); *Turner v. State*, 641 S.W.2d 383, 385 (Tex.App.—El Paso 1982, pet. ref'd). It acts merely to prevent a decision on the basis of pleadings and requires a hearing with live testimony and evidence. *Id.*

■ The applicant seeking a change of venue bears a heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. Absent such a showing, the trial judge is within the limits of his discretion in denying the change of venue. *Nethery v. State*, 692 S.W.2d 686, 694 (Tex.Crim.App.1985); *Ussery v. State*, 651 S.W.2d 767, 772 (Tex. Crim.App.1983). The test is whether outside influences affecting the community's climate of opinion as to a defendant are inherently suspect. *Nethery*, 692 S.W.2d at 694; *Banks v. State*, 643 S.W.2d 129, 132 (Tex.Crim.App.1982).

■ The evidence before the court indicated that local rumors, family threats, and aggravation existed; however, there was no evidence of any publicity about the case, nor of widespread public opinion or knowledge of it.

The State's witness testified that he had worked in all areas of Fort Bend County and was not aware of any conspiracy or prejudice against appellant, nor of any discussions about the case. Contrary to appellant's assertion, Saldivar's testimony as a whole reflects he was of the opinion that appellant could obtain a fair trial.

Appellant has not shown that outside influences substantially affected the community's climate of opinion. Further, there is no evidence that appellant was forced to accept trial by a prejudiced jury, and indeed, appellant does not contend she was forced to take an objectionable juror. *See Stiehl v. State*, 585 S.W.2d 716, 718–719 (Tex.Crim.App.1979). There is no showing that the trial judge abused his discretion. Appellant's first ground of error is overruled.

In appellant's second ground of error, she argues that the trial court erred by incorrectly defining murder in the definitional part of the charge, thereby authorizing the jury to convict appellant upon circumstances that do not constitute the offense of attempted murder.

In the definitional part of the charge, the court abstractly defined murder as follows:

> Our law provides that a person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

The court also correctly defined criminal attempt as set forth in Tex.Penal Code Ann. sec. 15.01(a) (Vernon Supp.1986), as well as the requisite culpable mental states and operative terms.

Later, in the application of the law to the facts paragraph of the charge, the court required the jury to find beyond a reasonable doubt that appellant had the specific intent to kill Janczak before they could convict her of attempted murder.

The court then correctly defined aggravated assault as set forth in Tex.Penal Code Ann. secs. 22.01(a)(1); 22.02(a)(1); and 22.02(a)(4) (Vernon Supp.1986), as well as the culpable mental state of recklessness. The jury was further instructed that if they found beyond a reasonable doubt that appellant intentionally or knowingly attempted to cause bodily injury to Janczak by shooting her with a deadly weapon, appellant would be guilty of aggravated assault.

Appellant correctly points out that a specific intent to kill is a necessary element of attempted murder. *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex.Crim.App.1982) (op. on reh'g). Appellant argues that the definitional part of the charge authorized a conviction on attempted murder without the specific intent to kill, namely, by inclusion of the definition of murder in Tex.Penal Code Ann. sec. 19.02(a)(2) (Vernon 1974) (i.e., death that results from an assault with the intent to cause serious bodily injury).

■ Because appellant at no time objected to that portion of the charge of which she now complains, error other than fundamental is waived. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The standard by which we review appellant's claim of fundamental error is whether the error is so egregious and created such harm that appellant has not had a fair and impartial trial. The degree of harm must be judged in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the trial record as a whole. *Id.*

■ In reviewing the state of the evidence, it must be emphasized that a pistol is a deadly weapon per se. *Giles v. State*, 617 S.W.2d 690, 691 (Tex.Crim.App.1981); *Williams v. State*, 567 S.W.2d 507, 509 (Tex.Crim.App.1978). Its use by a defendant raises a "presumption" of the defend-

ant's intent to kill. *See Flanagan,* 675 S.W.2d at 744; *Bell v. State,* 501 S.W.2d 137, 138 (Tex.Crim.App.1973).

■ The record as a whole supports the conclusion that the error, if any, presented in the definitional part of the court's charge was cured in the application paragraph and, therefore, is harmless. *See Boyett v. State,* 692 S.W.2d 512, 515–16 (Tex.Crim.App.1985); *Holman v. State,* 697 S.W.2d 824, 825 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

Appellant's second ground of error is overruled.

In her final two grounds of error, appellant argues that the trial court erred by refusing to allow the witness Kolar to testify as to whether he knew the complainant to be a dangerous person, and by refusing to admit the testimony of Rodney Janczak that the complainant had attacked him with a knife and a gun.

Before evidence of the deceased's or intended victim's character for violence becomes admissible, it must first be shown that there was some act of aggression by the deceased or victim that the character evidence tends to explain. *Currie v. State,* 692 S.W.2d 95, 96 (Tex.Crim.App.1985); *Dixon v. State,* 634 S.W.2d 855, 857 (Tex. Crim.App.1982).

■ At the time the court refused to allow Kolar to testify, and refused to admit Rodney Janczak's testimony, as to the complainant's alleged dangerous character, there was no evidence of any act of aggression by the complainant. The first evidence of an aggressive act by the complainant towards appellant was revealed during appellant's testimony, and appellant testified last. Appellant failed to re-offer the testimony of either Kolar or Rodney Janczak after her testimony raised that issue. The proper predicate was not laid for the admissibility of the testimony complained of, and the court's ruling was proper.

Appellant's third and fourth grounds of error are overruled.

The judgment is affirmed.