COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ANGEL FLORES, | § | No. 08-18-00065-CR |
| Appellant, | § | Appeal from the |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20130D04898) |
| | § | |

## **O P I N I O N**

A jury found Appellant Angel Flores guilty on two counts of attempted capital murder involving two separate victims. Based on the jury's verdict, he was sentenced to two 25-year prison terms (to run concurrently) and assessed the maximum possible fine. In three issues, Appellant contends that (1) the evidence was legally insufficient to support the jury's verdict, (2) the abstract portion of the jury charge incorrectly instructed the jury that he could be convicted of attempted capital murder without a finding of specific intent to kill his victims, and (3) charge error caused him egregious harm.[1] While we agree that the charge was erroneous, we conclude that Appellant has not met the egregious harm standard, nor has he convinced us that the evidence

---

[1] Appellant was convicted in October 2014 but failed to file a timely appeal. However, on March 29, 2018, the Texas Court of Criminal Appeals issued an order granting him the right to proceed with a late appeal.

is legally insufficient to support the conviction. Accordingly, we affirm.

## I. FACTUAL BACKGROUND

In the early morning hours of August 4, 2013, the two victims, Joseph Vargas and Michael Ramirez, were at Vargas's house for a social gathering, along with several other individuals, including Richard Arriaga and Vargas's sister, Alicia Vargas. While gathered outside the house, Vargas, Ramirez, and Arriaga observed a commotion involving an individual spray-painting graffiti ("tagging") at a nearby abutment to a bridge, followed by the sounds of a fight, and gunfire.

Shortly thereafter, they observed two or three men running from the general direction of the shooting and passing by the Vargas house. Moments later, they observed another set of three men rapidly approaching the Vargas home, shouting that they believed the first set of men had entered the Vargas house. The second set of men, one of whom was identified as Appellant, were shouting, "VSM," the name of a local street gang, and were asking who had "hit [them] up?" Although Vargas and his friends told Appellant that they were not the men Appellant was looking for, Appellant and his two compatriots continued to shout and act in an aggressive manner, causing Vargas and his friends to retreat into the house. A family member called 911. Appellant and his compatriots stayed outside the Vargas house for a short time, knocking on the door and continuing to shout, but eventually they left the scene. But before leaving, one used a baseball bat to shatter the window of a family member's car that was parked outside the home.

Shortly thereafter, the police arrived and observed the broken car window, the baseball bat, and also the fresh graffiti. However, after being unable to locate the suspects, the police quickly left. Minutes later, Appellant and the two other men returned to the Vargas house and once again confronted Vargas and his friends. Throughout this second encounter, Appellant, who Ramirez described as being the "lead" man, continued to yell "VSM," and accused Vargas and his friends

2

of throwing rocks at his house and of disrespecting him. Once again, Vargas and his friends attempted to tell Appellant that they were not the individuals he was looking for, and asked him to leave, but Appellant refused and continued to act in an aggressive and threatening manner. Vargas, Ramirez, and Arriaga thereafter retreated into the house for safety, but shortly thereafter, Ramirez went back outside to try to reason with Appellant and to encourage him to leave. Appellant, however, struck Ramirez in the face, apparently knocking him unconscious. Vargas, Arriaga, and Alicia remained inside the house, but Vargas could see Appellant and his friends severely beating Ramirez as he lay on the ground. They took turns stomping and jumping on his face, which Vargas described this way: "all three of them used [Ramirez's] head as a soccer ball."

Appellant and another of his compatriots then began pushing on the front door of the Vargas house. Vargas, Arriaga, and Alicia tried to hold it shut. Appellant was eventually able to enter the threshold of the house, and although Alicia tried to place herself between Appellant and Vargas, Appellant reached over Alicia's shoulders and punched Vargas in his face with his fists. As Vargas attempted to defend himself, Alicia observed Appellant take something from behind his back and swing at Vargas two times. Arriaga also observed Appellant swing at Vargas in a "stabbing motion" three times, and immediately thereafter, both Arriaga and Alicia saw Appellant holding a knife or "blade." Although Vargas himself did not actually see the knife and did not immediately realize that he had been stabbed, he and other witnesses in the house observed blood squirting from his arm, and he later determined that he had been stabbed in both his arm and his back.

When told that police were on the way, Appellant and his compatriots ran from the property. Alicia recalled that as they left, all three of them kicked Ramirez one last time. Alicia heard Appellant say, "this is the last time that you f--ing disrespect my house. You [f--ing]

3

learned your lesson. You don't ever [f--ing] come around me like this." Alicia placed a tourniquet on Vargas's arm to stop the bleeding, and after police and EMS arrived on the scene, both Ramirez and Vargas were taken to the hospital for treatment.

## II. PROCEDURAL BACKGROUND

Appellant was indicted on two counts of attempt to commit capital murder for the assaults on Vargas and Ramirez. The indictment alleged that on or about August 4, 2013, Appellant stabbed Joseph Vargas about his body with a deadly weapon, i.e., a knife, and that he kicked Michael Ramirez about his head with a deadly weapon, i.e., his foot, with the specific intent in both instances to commit the offense of capital murder, all while in the course of committing or attempting to commit a burglary. A jury found Appellant guilty of both counts of capital murder, and this appeal followed.[2]

## III. ISSUES ON APPEAL

In his first two issues, Appellant contends that he was egregiously harmed by the jury charge, asserting that it incorrectly instructed the jury that he could be convicted of attempted capital murder without a finding that he had the specific intent to kill his victims. In his third issue, Appellant contends that the evidence was legally insufficient to support the jury's verdict. We start our analysis with the third issue.

---

[2] Appellant was also charged in the indictment with four counts of engaging in organized criminal activity, but the State later dismissed those charges. In addition, Appellant was charged with one count of burglary of a habitation, alleging that he had entered the Vargas home with the intent to commit the felony offense of aggravated assault. After Appellant was convicted of the attempted capital murder offenses, the trial court dismissed the burglary charge, finding that it arose from the same incident.

4

## IV.  SUFFICIENCY OF THE EVIDENCE

### A.  Standard of Review

Due process as guaranteed through the Fourteenth Amendment requires that every conviction must be supported by legally sufficient evidence.  *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex.Crim.App. 2010).  In a legal sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit *any* rational jury to find the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 912 (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

In applying that standard, we acknowledge that our system designates the jury as the sole arbiter of the credibility and the weight attached to the testimony of each witness.  *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014).  The jury also discharges the duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319.   In doing so, the jury may choose to believe or disbelieve that testimony.  *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008).  When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination.  *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt.  *Dobbs*, 434 S.W.3d at 170. Each fact need not point directly and independently to the guilt of the defendant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Id.* Nonetheless, juries are not permitted to come to conclusions based on "mere speculation or

5

factually unsupported inferences or presumptions." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex.Crim.App. 2018), *quoting Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex.Crim.App. 2007).

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). However, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, *citing Jackson*, 443 U.S. at 318.

**B. The Hypothetically Correct Jury Charge**

We measure the sufficiency of the evidence to support a conviction against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theory of liability, and adequately describes the offense for which the defendant was tried. *Id.*; *see also Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex.Crim.App. 2018).

In this case, Appellant was charged with attempted capital murder. The Penal Code provides that an individual commits the offense of murder one of two ways: (1) by intentionally or knowingly causing the death of an individual; or alternatively, (2) by intending to cause serious bodily injury and committing an act clearly dangerous to human life. TEX.PENAL CODE ANN. § 19.02(b)(1)(2). And the Penal Code provides that a person commits the offense of criminal attempt "if, with specific intent to commit an offense, he does an act amounting to more than mere

6

preparation that tends but fails to effect the commission of the offense intended." TEX.PENAL CODE ANN. § 15.01(a). Because of the specific intent requirement for committing a criminal attempt, the Court of Criminal Appeals has recognized that for attempted murder or attempted capital murder, the State must prove that the defendant had the specific intent to kill his victims.[3] *See Flanagan v. State*, 675 S.W.2d 734, 741 (Tex.Crim.App.1984) (op. on reh'g); *see also Robbins v. State*, 145 S.W.3d 306, 309 (Tex.App.--El Paso 2004, pet. ref'd). Stated otherwise, a conviction for attempted murder or attempted capital murder cannot be based on a defendant acting with only an intent to cause serious bodily injury. If that were the case, the defendant's only offense would be aggravated assault. *Flanagan*, 675 S.W.2d at 741; *Dovalina v. State*, 564 S.W.2d 378, 386 (Tex.Crim.App. 1978) (en banc) (Odom, J., concurring) (if a defendant only intended to cause his victim serious bodily injury, the offense is aggravated assault, not attempted murder).

## C. Analysis

Appellant contends that the State presented insufficient evidence to support an inference that he had the specific intent to kill his two victims, and that, at most, the evidence only gives rise to an inference that he intended to cause his victims serious bodily injury. In support of this argument, Appellant contends that the State did not present any direct evidence of his intent to kill his victims, such as a hostile pre-existing relationship, or that he made any statements during the assaults indicating an intent to kill anyone. We note, however, that the State is not required to produce direct evidence of a defendant's culpable mental state in order to sustain a conviction.

---

[3] As part of the attempted capital murder charge, as set forth in the indictment, the State was also required to prove that Appellant was engaged in a burglary at the time of the attempted murder. *See* TEX.PENAL CODE ANN. § 19.03(a)(2) (a person commits capital murder if he "intentionally commits the murder in the course of committing or attempting to commit . . . burglary . . . ."). On appeal, Appellant does not dispute that he was engaging in a burglary at the time that he assaulted his victims, and instead his sole focus is on whether the evidence was sufficient to allow a rational jury to conclude that he had the specific intent to kill his victims.

7

*See Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002). Instead, the requisite culpable mental state is almost always proved circumstantially. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991) (en banc).

Further, in deciding whether a defendant had the requisite intent to kill a victim, the jury may use its collective common sense and may apply common knowledge and experience. *Robbins*, 145 S.W.3d at 309, *citing Brown v. State*, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003). A jury may infer intent from any facts that tend to prove its existence, including "the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims." *Hart*, 89 S.W.3d at 64, *quoting Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999) (en banc) (citations omitted); *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). However, while the jury may consider statements made by the defendant in order to infer his intent, there is no requirement that the defendant must have verbalized his intent to kill his victim in order to support a finding that he harbored the requisite intent. *See, e.g.*, *Graham v. State*, No. 08-13-00115-CR, 2016 WL 1253460, at *4 (Tex.App.--El Paso March 30, 2016, no pet.) (not designated for publication) (recognizing that there is no requirement that the "specific intent to kill must be supported in every case by evidence that the defendant . . . verbalized his intent to kill").

Importantly, the jury may infer that the defendant had an intent to kill his victim from his use of a deadly weapon, "unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex.Crim.App. 1986) (en banc); *see also Cavazos v. State*, 382 S.W.3d 377, 384 (Tex.Crim.App. 2012). In fact, the Court of Criminal Appeals has recognized that "[i]f a deadly weapon is used in [a] deadly

8

manner, the inference is almost conclusive that he intended to kill."[4] *Godsey*, 719 S.W.2d at 581; *see also Morrison v. State*, 480 S.W.3d 647, 665 (Tex.App.--El Paso 2015, no pet.) (recognizing that "[e]vidence that a defendant has used a deadly weapon in this manner, overwhelmingly, if not conclusively, establishes that the defendant is in fact guilty of murder"). Certain weapons, such as firearms and other weapons manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury, are considered deadly weapons per se, but the Penal Code also provides that a deadly weapon can be anything that is "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[5] TEX.PENAL CODE ANN. § 1.07(a)(17); *see also Turner v. State*, 664 S.W.2d 86, 90 (Tex.Crim.App. 1983) (discussing the distinction between the two categories of deadly weapons). When determining whether a particular object was used as a deadly weapon, we may consider both the acts of the defendant, as well as the extent of the injuries suffered by the victim. *See Lane v. State*, 151 S.W.3d 188, 192 (Tex.Crim.App. 2004); *Turner*, 664 S.W.2d at 90.

### 1. The Attack on Vargas

We first consider whether Appellant used a deadly weapon when he stabbed Vargas with a knife. Although a knife is not considered a deadly weapon per se, it can be considered a deadly

---

[4] Appellant contends that the "use of a deadly weapon in and of itself will not support proof of a specific intent to murder," citing to *Brown v. State*, 657 S.W.2d 143, 145 (Tex.Crim.App. 1983). Appellant is correct in the sense that a defendant's use of a deadly weapon will only support an inference of an intent to kill if the defendant used the weapon in a deadly manner. Thus, in *Brown*, the Court held that it could not presume that a defendant had the intent to kill his victim based solely on the fact that he shot a gun into a home. However, the court noted that the defendant's intent to kill his victim could be inferred, in part, from the fact that he knew or should have known that the victim was inside the house. *Id.* at 144-145. As such, the holding in *Brown* is consistent with the general principle that a jury may infer a specific intent to kill in situations in which the defendant used a weapon in a deadly manner.

[5] In turn, section 1.07(a)(46) of the Penal Code provides that "'serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(46).

9

weapon, depending on either its design or usage. *See, e.g.*, *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991) (en banc); *Iglesias v. State*, 564 S.W.3d 461, 466 (Tex.App.--El Paso 2018, no pet.). In the present case, witnesses observed Appellant take two or three swings at Vargas with a knife, stabbing him twice, once in the back and once in the arm. Although the medical records that were introduced into evidence indicated that the wound to Vargas's back was superficial, the knife hit a main artery in Vargas's arm, which caused him significant blood loss and required him to undergo surgery to graft a vein from his thigh into his arm. As well, Vargas testified that because of the significant amount of blood that he lost before arriving at the hospital, he has suffered lasting nerve damage to his arm that interferes with his daily functions. Accordingly, given the manner in which Appellant used the knife to stab Vargas, combined with the extent of his injuries, the jury could have rationally inferred that Appellant used the knife as a deadly weapon during his attack on Vargas, and that he therefore had the specific intent to kill Vargas. *See, e.g.*, *Ex parte Adams*, 586 S.W.3d 1 (Tex.Crim.App. 2019) (recognizing that the issue of whether defendant used a deadly weapon could not "rationally be in dispute" where defendant swung a knife at his victim, witnesses observed him stab the victim, and the victim was in fact stabbed).

### 2. *The Attack on Ramirez*

We next consider whether Appellant used his foot as a deadly weapon during his attack on Ramirez. It is well-established that while a foot is not a deadly weapon per se, it can become a deadly weapon if in the manner of its use it is capable of causing death or bodily injury. *See, e.g.*, *Powell v. State*, 939 S.W.2d 713, 717 (Tex.App.--El Paso 1997, no pet.); *see also Lane*, 151 S.W.3d at 191. In this case, the record demonstrates that after Appellant punched Ramirez in his face, knocking him unconscious, Appellant and his compatriots repeatedly used their feet to kick

and stomp on Ramirez's head, and even used a vehicle parked nearby as leverage to add to the impact as they kicked him. When police arrived, they found Ramirez in "agonizing pain," and photos of his face demonstrated that he had been severely beaten in the attack to the point that his face was barely recognizable. The State also introduced evidence of Ramirez's medical records that showed he suffered a concussion, a contusion of his eyeball, an orbital fracture of his left eye socket, a small left medial wall fracture, a hematoma, and a lacerated lip. Given the manner in which Appellant used his feet to assault Ramirez, together with the extent of Ramirez's injuries, a rational jury could have inferred that Appellant used his feet as a deadly weapon during his attack on Ramirez, and that he therefore had the specific intent to kill Ramirez. *See, e.g.*, *Powell*, 939 S.W.2d at 718-19 (record supported an inference that defendant used his foot as a deadly weapon, where he violently kicked his victim in the head with enough force to raise his head off the ground and to cause a concussion); *see also Roberson v. State*, 144 S.W.3d 34, 38-40 (Tex.App--Fort Worth 2004, pet. ref'd) (jury could have inferred that defendant had the specific intent to kill his victim, where he knocked victim to the floor and stomped on the left side of victim's head with his foot, using a chair for leverage).

Despite the above, Appellant contends that the evidence was insufficient to support an inference that he intended to kill either of his victims, because the State failed to introduce any medical evidence to establish that the lives of either Vargas or Ramirez were ever in danger. We note, however, that no such evidence is required to sustain a conviction for attempted murder. To the contrary, "attempted murder does not require that the victim sustain a life-threatening injury, but rather, that the actor intended to bring about the desired result."[6] *Fulford v. State*, No. 05-10-

---

[6] In fact, the offense of attempted murder does not require the State to prove that the victim suffered any actual physical harm. The fact that a victim may have been able to successfully defend himself against a defendant's attack does not negate an intent to kill, as it would be a "dismal day for victims [if a court] required actual harm to occur before a defendant's murderous intent could be inferred." *Moreno v. State*, 755 S.W.2d 866, 869-70 (Tex.Crim.App.

11

00820-CR, 2012 WL 752623, at *2-3 (Tex.App.--Dallas Mar. 8, 2012, no pet.) (not designated for publication); *see also Roberson*, 144 S.W.3d at 39 (recognizing that the State is not required to prove severe bodily injury as an element of attempted murder).

Accordingly, given the nature of Appellant's attacks on his victims, and in particular, his use of a deadly weapon during the course of those attacks, we conclude that a rational trier of fact could have inferred that Appellant had the specific intent to kill both of his victims.

Appellant's Issue Three is overruled.

## V. CHARGE ERROR

In Issues One and Two, Appellant contends that the jury charge erroneously defined the offense of attempted capital murder in a manner that would have allowed the jury to convict him of attempted capital murder without finding that he had the specific intent to kill his victims, and that he was egregiously harmed by the error.

### A. Standard of Review

When analyzing claimed error in a jury charge, we utilize a two-pronged test. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc). The first prong requires us to determine whether error exists. *Ngo*, 175 S.W.3d at 743. If no error is found, then the analysis ends; however, if charge error is found, the error is analyzed for harm. *Almanza*, 686 S.W.2d at 171.

The amount of harm necessary to warrant a reversal depends on whether the accused objected to the jury charge, and thereby preserved the error. *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171; *see also Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved by a timely objection, we review the record to determine if the error caused

1988) (en banc).

12

the accused "some harm."  *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171.   However, if no objection was lodged, as Appellant concedes here, we review the unpreserved jury-charge error for egregious harm.  *Almanza*, 686 S.W.2d at 171.   Egregious harm is actual, rather than theoretical harm, and must be of such a nature that it affected the very basis of the case, deprived the accused of a fair and impartial trial, or otherwise vitally affected the accused's defensive theory at trial.  *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex.Crim.App. 2015); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011).   "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"  *Villarreal*, 453 S.W.3d at 433, *quoting Reeves v. State*, 420 S.W.3d 812, 816 (Tex.Crim.App. 2013).   In making an egregious harm determination, we examine: (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of the evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole.  *See Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008).

### 1. *Error in the Jury Charge*

As explained above, although the offense of murder may be committed with either a specific intent to kill or with the intent to cause an individual serious bodily injury, the offense of attempted murder requires a specific intent to kill the victim.  Accordingly, the jury may not convict a defendant of attempted murder based solely on a finding that he had the intent to cause serious bodily injury to his victim.  *Flanagan*, 675 S.W.2d at 741; *see also Robbins*, 145 S.W.3d at 309.   Appellant points out that the abstract portion of the jury charge instructed the jury on both definitions of murder as follows:

> Our law provides that a person commits the offense of murder when he intentionally or knowingly causes the death of an individual; *or if he intends to cause serious bodily injury and intentionally or knowingly commits an act clearly dangerous to*

*human life that causes the death of an individual during the same criminal transaction* [emphasis added].

The charge then defined the offense of attempt as follows:

> A person attempts to commit an offense, if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended.

Appellant argues that when the instructions are read together, the jury was effectively instructed that it could convict him of attempted capital murder if it found that he only harbored an intent to cause his victims serious bodily injury. A proper jury charge, however, should only define murder as requiring a specific intent to kill, thereby making it clear to the jury that it could only convict him of attempted capital murder if it found that he had the requisite intent to kill his victims.

The State does not contest this point, and we agree with Appellant that in an attempted murder case, the jury charge should define murder using only the "specific intent to kill" definition, and should not include any surplus reference to the alternative definition of murder in which a defendant may commit the offense with only an intent to cause his victim serious bodily injury. *See White v. State*, 642 S.W.2d 238, 240 (Tex.App.--Houston [14th Dist.] 1982, no pet.) (trial court incorrectly included both definitions of murder in the jury charge in an attempted murder case). However, because Appellant did not object to this portion of the jury charge, we next consider whether Appellant suffered any egregious harm as the result of this error.

### 2. *Egregious Harm Analysis*

We first consider the jury charge as a whole in determining whether Appellant was egregiously harmed by the error in the abstract or definitional portion of the jury charge. *Allen*, 253 S.W.3d at 264. The application part of the charge made it clear to the jury that it could only

14

convict Appellant of attempted capital murder if it found beyond a reasonable doubt that that he had the intent to kill his victims:

> If you find from the evidence beyond a reasonable doubt that on or about the 4th day of August, 2013 in El Paso County, Texas, [Appellant] did then and there, with the specific intent to commit the offense of capital murder, *intentionally or knowingly while in the course of committing or attempting to commit the offense of burglary, attempt to cause the death of Joseph Vargas*, an individual, by stabbing Joseph Vargas about the body with a deadly weapon, to-wit: a knife, said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended and the said defendant, [Appellant], did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury during the commission of or immediate flight from said felony offense [emphasis added].

> If you find from the evidence beyond a reasonable doubt that on or about the 4th day of August, 2013 in El Paso County, Texas, [Appellant] did then and there, with the specific intent to commit the offense of capital murder, *intentionally or knowingly while in the course of committing or attempting to commit the offense of burglary, attempt to cause the death of Michael Ramirez,* an individual, by kicking Michael Ramirez about the head with a deadly weapon, to-wit: a foot, said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended and the said defendant, [Appellant], did then and there use or exhibit a deadly weapon, to-wit: a foot, that in the manner of its use or intended use was capable of causing death or serious bodily injury during the commission of or immediate flight from said felony offense [emphasis added].

When, as here, the application portion of a jury charge correctly instructs the jury on the required elements of the charged offense, any error in the abstract or definitional portion of the charge is not considered egregious. *See, e.g.*, *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999) (en banc); *Patrick v. State*, 906 S.W.2d 481, 493 (Tex.Crim.App. 1995) (en banc). This is because the application paragraph of a jury charge, which is the "heart and soul" of the charge, "explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Whitington v. State*, No. 08-13-00102-CR, 2015 WL 3653326, at *8 (Tex.App.--El Paso Apr. 24, 2015, pet. ref'd), *citing Vasquez v. State*, 389 S.W.3d 361, 367 (Tex.Crim.App. 2012); *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex.Crim.App. 2013); *In re I.L.*, 389 S.W.3d 445, 453-4 (Tex.App.--El Paso

15

2012, no pet.) (finding that error in the abstract portion of the jury charge incorrectly defining the requisite mental state did not cause egregious harm where the application paragraph correctly pointed the jury to the correct mental state required). In other words, it is "the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Whitington*, 2015 WL 3653326, at *8.

At least two of our sister courts have recognized, even if the abstract portion of a jury charge in an attempted murder case incorrectly includes the definitions of both forms of murder, i.e., specific intent murder and murder with the intent to cause serious bodily injury, any such error is cured by an appropriate application paragraph instructing the jury that it may only convict the defendant if it finds that he had the requisite intent to kill his victim. *See Kolar v. State*, 705 S.W.2d 794, 798 (Tex.App.--Houston [1st Dist.] 1986, no pet.); *White*, 642 S.W.2d at 240-42. Accordingly, we conclude that any error in the abstract portion of the jury charge in Appellant's case was cured by the application portion of the charge, which made it clear to the jury that it could only convict him of attempted capital murder if it found that he had the intent to kill his victims.

Although our analysis may stop here, we note that two of the other harm factors--the state of the evidence and the arguments of counsel--also cut against egregious harm. First, the record contains ample evidence from which the jury could have inferred that Appellant acted with an intent to kill his victims. As set forth above, the evidence demonstrated that Appellant engaged in a protracted attack on both Ramirez and Vargas, using deadly weapons in both instances, and that Appellant only stopped his attack when he was informed that the police were on their way. *See, e.g.*, *Kolar*, 705 S.W.2d at 794 (evidence of defendant's use of a deadly weapon, which allowed the jury to infer his intent to kill, was a factor in determining that any error in the jury

16

charge defining the requisite intent necessary to convict the defendant of attempted murder did not cause the defendant egregious harm).

In addition, although the prosecutor admittedly referred to both definitions of murder during voir dire and during her closing argument, she nevertheless emphasized throughout both phases of trial that the offense of murder, and the offense of attempted murder in particular, requires an "intent to kill."[7]   In addition, throughout her closing argument, the prosecutor repeatedly pointed out to the jury that the evidence established that Appellant had attacked his victims in such a manner that there could be no doubt that he harbored the intent to kill them. Based on the above, we conclude that Appellant was not egregiously harmed by any error in the jury charge.

Appellant's Issues One and Two are overruled.

## VI.   CONCLUSION

Finding sufficient evidence to support Appellant's conviction and finding no egregious error in the jury charge, the trial court's judgment is affirmed.

JEFF ALLEY, Chief Justice

December 30, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[7] Appellant's attorney did not focus on the issue of Appellant's intent, and instead, primarily argued that the evidence was insufficient to place Appellant at the scene of the crime, noting that he had alibi witnesses who testified that he was at a party the night of the offense, and that there was insufficient evidence to support an inference that he had actually entered Vargas's residence at the time the assaults took place, thereby suggesting that no burglary took place.